UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RANDY RICHARDSON AND
LESLIE RICHARDSON,

        Plaintiffs,

  v.

WELLS FARGO INSURANCE
SERVICES USA, INC.,

        Defendant.

C16-1228 TSZ

ORDER

THIS MATTER comes before the Court on defendant Wells Fargo Insurance Services USA, Inc.'s ("WFIS") Motion for Summary Judgment, docket no. 15. Having reviewed all papers filed in support of, and in opposition to, defendant's motion the Court enters the following Order.

**Background**

Plaintiffs utilized the brokerage services of WFIS from April 2012 through June 16, 2016. Declaration of Randy Richardson, docket no. 20, ¶ 2. During that period, WFIS procured approximately eleven insurance policies for plaintiffs which covered multiple residential properties and personal vehicles, a boat, and a recreational vehicle,

ORDER - 1

1   including eight policies with Allied Insurance Company ("Allied").[1]  *Id.*; Declaration of

2   Shirley Gordon, docket no. 17, Ex. 1 at 3 (listing policies).  In December of 2014, an

3   issue arose with the renewal of a policy on plaintiffs' primary residence in Woodinville,

4   Washington.  Declaration of Stephen G. Skinner, docket no. 16, Ex. A (Deposition of

5   Randy Richardson at 47:10 – 50:23).  Plaintiffs spoke initially with Nicole McDonald in

6   WFIS's Service Center in Minneapolis, Minnesota, who put them in contact with Taw

7   Jackson, an account representative working in WFIS's Seattle office.  Skinner Decl.,

8   Ex. A (Richardson Dep. at 51:15-53:17).  Mr. Jackson ultimately resolved the renewal

9   issue with Allied and the renewal policy on the plaintiffs' primary residence was issued.

10  *Id.* (Richardson Dep. at 53:11-53:20).

11       On March 13, 2015, Allied sent a Notice of Cancellation for Non-Payment of

12  Premium (the "Notice") to plaintiffs' PO Box in Woodinville, Washington.  Gordon

13  Decl., Ex. 1.  The Notice indicated that unless payment was received on or before

14  March 29, 2015, plaintiffs' insurance policies with Allied would be cancelled.  *Id.*

15  Plaintiffs did not make payment, and thereafter Allied cancelled the eight policies listed

16  in the Notice.[2]  The policy at issue in this lawsuit covered plaintiffs' vacation home in

17  Manson, Washington (the "Manson Property") from November 5, 2014, to November 5,

18  2015, and was one of the policies cancelled in March of 2015.  Gordon Decl., Ex. 1

19  (Notice of Cancellation) Ex. 2 (Policy for the Manson Property).  There is no evidence

---

[1] Defendant indicates that there were nine policies with Allied, but the Notice of Cancellation to which defendant cites only lists eight.  Declaration of Shirley Gordon, docket no. 17, Ex. 1 at 3.

[2] Mr. Richardson contends that he did not receive the Notice, or any other notification that his policies had been cancelled.  Skinner Decl., Ex. A (Richardson Dep. at 141:5-12).

ORDER - 2

that WFIS received a copy of the Notice or was otherwise informed of the pending cancellation.

Over the next fifteen months, Mr. Richardson had several communications with Mr. Jackson regarding the Allied policies. Richardson Decl., ¶ 7. In December of 2015, Mr. Richardson received notice from Wells Fargo Bank, the mortgagee on plaintiffs' vacation home in Lake Havasu, Arizona, (the "Lake Havasu Property") that it had purchased a lender's policy and would be charging plaintiffs for the premiums. Richardson Decl., ¶ 8; Skinner Decl., Ex. A (Richardson Dep. at 94:1-96:14). The mortgagee explained that the policy had been purchased because the mortgagee received notice that plaintiffs' homeowner's policy had been cancelled for non-payment. *Id.*

Although the policy covering the Lake Havasu Property was among those cancelled by Allied in March of 2015, Mr. Jackson "assured" Mr. Richardson that his residential properties were covered, and without contacting Allied, submitted evidence of insurance coverage to the mortgagee reflecting, incorrectly, that the Lake Havasu Property was insured through November 15, 2016. Richardson Decl., ¶ 8; Skinner Decl., Ex. A (Richardson Dep. at 96:19-25); Declaration of Robert Green, docket no. 19, Ex. A (Deposition of Taw Jackson at 85:5-86:12; 118:17-119:25). After receiving and accepting proof of insurance from Mr. Jackson, the mortgagee refunded the premiums it had charged plaintiffs for the lender's policy. Skinner Decl., Ex. A (Richardson Dep. at 96:23-97:18).

In January of 2016, believing that he had misplaced his insurance card for his Mercedes, plaintiff requested a replacement card from Mr. Jackson. *Id.* (Richardson Dep.

ORDER - 3

at 100:19-101:22).  Although the policy covering the Mercedes was among those cancelled in March of 2015, Mr. Jackson issued an auto insurance card reflecting that the vehicle was covered through November 5, 2016.[3]  *Id.* (Richardson Dep. at 104:18-21).

In May of 2016, plaintiffs discovered a significant water leak at the Manson Property which flooded both floors, causing extensive damage.  *Id.* (Richardson Dep. at 112.21-113:4; 114:21-115:3).  Based on information Mr. Richardson received from the local water company and Servpro, the company who provided mitigation services for the Manson Property, water had been leaking from the freezer "for probably four months at least."  *Id.* (Richardson Dep. at 113:7-25).  Plaintiffs had not visited the Manson Property during that time period because it was primarily a summer vacation house.  *Id.* (Richardson Dep. at 115:13-116:8).

Mr. Richardson initially reached out to Mr. Jackson to report the water damage, but was unable to reach him.  *Id.* (Richardson Dep. at 117:2-19).  Mr. Richardson then contacted Allied, who informed him that Allied had no record of an insurance policy covering the property.  *Id.* (Richardson Dep. at 117:2-118:20).  When Mr. Richardson reached Mr. Jackson after the holiday weekend, he informed Mr. Jackson of the water damage and his discussion with Allied.  *Id.* (Richardson Dep. at 118:4-121:5). Mr. Jackson assured Mr. Richardson that the Manson property was "insured" and agreed to look into the matter on Mr. Richardson's behalf.  *Id.* (Richardson Dep. at 119:23-121:5) Over the course of two weeks, Mr. Jackson learned, apparently for the first time,

---

[3] Mr. Richardson's declaration also describes two other interactions with Mr. Jackson during this time period, one involving a claim for theft and another requesting increased coverage on a home plaintiffs were remodeling.  Richardson Decl., ¶ 7.

ORDER - 4

1  that plaintiffs' policies with Allied had been cancelled in March of 2015.  On June 16,
2  2016, Mr. Jackson informed plaintiffs that there was no policy providing coverage on the
3  Manson Property.  *Id.* (Richardson Dep. at 136:17-137:25).
4  　　　Plaintiffs filed the instant lawsuit on July 6, 2016, in King County Superior Court,
5  seeking to recover the costs incurred as a result of the uninsured damage to the Manson
6  Property.  Thereafter, WFIS removed the action to the Western District of Washington.
7  Plaintiffs allege that as a result of WFIS's conduct, the water damage to the Manson
8  Property was uninsured.  Plaintiffs' complaint asserts four theories of recovery:
9  (1) breach of contract, (2) negligence; (3) gross negligence, and (4) negligent
10 misrepresentation.  Complaint, docket no. 1-1, Ex. B, ¶¶ 19-36.

11 **Discussion**

12 **I.    Legal Standard**

13 　　　The Court should grant summary judgment if no genuine issue of material fact
14 exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.
15 56(c).  The moving party bears the initial burden of demonstrating the absence of a
16 genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A
17 fact is material if it might affect the outcome of the suit under the governing law.
18 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  While "all justifiable
19 inferences" are to be drawn in favor of the non-moving party, *id.* at 255, when the record,
20 taken as a whole, could not lead a rational trier of fact to find for the non-moving party,
21 summary judgment is warranted.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*
22 *Corp.*, 475 U.S. 574, 587 (1986) (citations omitted).

23

## II. Analysis

### A. Negligence and Gross Negligence

When a broker's negligence leads to inadequate coverage, he or she is liable for money damages to the insured for the resulting loss. *AAS-DMP Mgmt., L.P. Liquidating Trust v. Accordia Nw., Inc.*, 115 Wn. App. 833, 838-39 (2003). To recover against an insurance broker for negligence, the insured must prove: (1) that the agent had a duty of care to protect the insured against a certain risk; (2) a breach of that duty; and (3) that the breach was the proximate cause; (4) of the insured's damages. *Peterson v. Big Bend Ins. Agency, Inc.*, 150 Wn. App. 504, 515 (2009). Gross negligence means negligence "substantially and appreciably greater than ordinary negligence." *Nist v. Tudor*, 67 Wn.2d 322, 331 (1965). There can be "no issue of gross negligence unless there is substantial evidence of serious negligence." *Id.*

Plaintiffs allege that WFIS was negligent in (1) procuring a "Primary Residence Policy" on the Manson Property despite plaintiffs' request for insurance on their vacation home; and (2) failing to advise plaintiffs that the Manson Property was uninsured.

#### 1. Procurement

Plaintiffs' allegation that WFIS was negligent in procuring the insurance coverage for the Manson Property fails as a matter of law—plaintiffs cannot show that defendant's alleged breach was the proximate cause of the lack of insurance coverage for the water damage to the Manson Property. To establish proximate cause, plaintiffs must prove that the damage would have been covered "by the policy that would have been in effect except for the negligence of the broker." *Pacific Dredging Co. v. Hurley*, 65 Wn.2d 394,

ORDER - 6

401 (1964). This requires plaintiffs to establish that "the loss would have been within the risks insured against in the policy" if the "insurance broker had obtained the insurance requested" by the insureds. *Id.* at 400. Plaintiffs have not adduced any evidence that policies specific to vacation homes were available at the time the policy on the Manson Property was procured (or at any time thereafter) or that such policies would have covered the water damage claim had they been procured. Without any such evidence, plaintiffs cannot meet their burden of showing that WFIS's failure to procure a vacation home policy proximately caused the water damage claim to be uninsured. Speculation and conjecture are insufficient to support a claim for negligence. *See Kristjanson v. City of Seattle*, 25 Wn. App. 324, 326-27 (1980). And any conclusion that WFIS's failure to procure an unspecified vacation home policy caused the lack of coverage would be entirely speculative in light of the complete lack of evidence that such policies would have covered the water damage claim.

### 2. Failure to Advise Plaintiffs that the Manson Property was Uninsured

Plaintiffs' allegation that WFIS was negligent in failing to advise them that the Manson property was uninsured likewise fails as a matter of law. In a negligence action, a determination of whether a legal duty exists is a question of law for the court. *McClammy v. Cole*, 158 Wn. App. 769, 773-74 (2010). Ordinarily, an insurance agent does not have a duty to advise the insureds as to the adequacy of their insurance coverage. *Suter v. Virgil R. Lee & Son Inc.*, 51 Wn. App. 524, 528 (1988); *Hardt v. Brink*, 192 F. Supp. 879, 880 (W.D. Wash. 1961). The general duty of reasonable care which an insurance agent owes his client does not include the obligation to procure a

ORDER - 7

policy affording the client complete liability protection. *McClammy*, 158 Wn. App. at 774. Instead, an insurance broker ordinarily assumes only those duties normally found in any agency relationship, which, in this context, includes primarily the obligation to exercise good faith in carrying out the client's instructions with respect to procuring the requested insurance policy. *See AAS-DMP*, 115 Wn. App. at 839. Mr. Richardson concedes that WFIS "always procured the insurance [he] requested." Skinner Decl., Ex. A (Richardson Dep. at 162:2-163:12).

Plaintiffs' sole argument that WFIS breached a duty to plaintiffs is that WFIS, through Mr. Jackson, assumed an enhanced duty to advise plaintiffs regarding their insurance coverage in light of the "special relationship" between Mr. Richardson and Mr. Jackson. Washington Courts have recognized the existence of "a special relationship" imposing an enhanced duty to advise an insured where (1) the agent holds himself out as an insurance specialist and receives additional compensation for consulting and advice, or (2) there is a long-standing relationship, some type of interaction on the question of coverage, and the insured relied on the agent's expertise to the insured's detriment. *AAS-DMP*, 115 Wn. App. at 839.

In *AAS-DMP*, the Court concluded that a special relationship existed between the parties where the insurance broker sold specialized and complex maritime insurance policies to the insured over a period of ten or fifteen years, during which time the broker spoke nearly every day with the insured regarding coverage issues. *Id.* at 836-37. Relying on *AAS-DMP*, plaintiffs contend that "the quality of the relationship [between

Mr. Richardson and Mr. Jackson] and Mr. Jackson's actions" establish that there is a question of fact with respect to whether a special relationship existed.

The circumstances of this case, however, are not comparable to those in *AAS-DMP*. Unlike *AAS-DMP*, WFIS was retained to procure standard home, auto, and recreational vehicle policies, and the relationship between Mr. Jackson and Mr. Richardson lasted only 18 months. In fact, Mr. Jackson did not undertake any work on Mr. Richardson's account until after the policy on the Manson Property had already been procured. There is no evidence that Mr. Jackson held himself out as a specialist or that he received additional compensation from Mr. Richardson to provide advice. The record simply does not reflect the sort of regular, long-term interaction concerning coverage sufficient to demonstrate a "special relationship" under Washington law. *See Suter*, 51 Wn. App. at 529. The limited interactions between Mr. Jackson and Mr. Richardson regarding coverage issues fail to establish that WFIS assumed duties beyond those "normally found in any agency relationship." *See American Commerce Ins. Co. v. Ensley*, 153 Wn. App. 31, 42 (2009) (affirming summary judgment in favor of broker where the evidence reflected only limited and sporadic communications during the parties' "multi-year" relationship). In the absence of a "special relationship," WFIS was under no duty to advise plaintiffs regarding coverage. *See Hardt*, 192 F. Supp. at 880.

Even if WFIS had assumed a duty to inform plaintiffs that the Manson Property was uninsured, however, plaintiffs cannot establish that WFIS's breach of that duty proximately caused the lack of coverage for the water damage. Plaintiffs contend, in essence, that they would have renewed the policy on the Manson Property had they been

1  informed that the property was uninsured.  However, the policy covering the Manson
2  Property contains an exclusion which, in pertinent part, excludes loss caused by
3  "[c]onstant or repeated seepage or leakage of water or steam over a period of weeks,
4  months, or years from within . . . [a] plumbing, heating, air conditioning, or automatic
5  fire protective sprinkler system; or a household appliance on the 'residence
6  premises' . . . ."  Gordon Decl., Ex. 2 at 22 (policy), 41 (endorsement).

7  The only evidence in the record regarding the cause of the water damage to the
8  Manson Property reflects that, even if the policy had been renewed, the exclusion would
9  have applied to exclude the loss from coverage.  Mr. Richardson testified that the water
10 line to the freezer, a household appliance under the plain language of the exclusion, "was
11 broken," and discharged water into the house during the approximately four month period
12 that plaintiffs had not visited the Manson Property.  Skinner Decl., Ex. A (Richardson
13 Dep. at 113:7-113:25; 115:13-116:19).  Mr. Richardson indicated that ServPro explained
14 that water could have been leaking from the broken freezer line for "four or five months."
15 *Id.* (Richardson Dep. at 113:7-113:25).

16 The extensive water damage plaintiffs discovered corroborates this conclusion.
17 Mr. Richardson testified that although the freezer line was probably only "a quarter inch
18 or three eighths" thick, two floors of the home were flooded, the wood had peaked, *id.*
19 (Richardson Dep. at 112:21-113:4), mold had grown two or three feet off the floor,
20 sheetrock was falling down, and the floors were swollen, *id.* (Richardson Dep. at 114:21-
21 115:3).  This undisputed evidence demonstrates that the water damage was caused by
22 "[c]onstant leakage" that occurred over a period of weeks or months and thus, that the
23

damage would not have been covered under the plain language of the exclusion even if the policy had been renewed. As such, plaintiffs have failed to show that WFIS's failure to advise them that the Manson Property was uninsured proximately caused the lack of coverage for the water damage.[4] *See Sternoff Metals Corp. v. Vertecs Corp.*, 39 Wn. App. 333, 338-39 (1984) ("If an event would have occurred regardless of the defendant's conduct, that conduct is not the proximate cause of the plaintiffs' injury). Accordingly, plaintiffs' claims for negligence and gross negligence must be dismissed.

### B. Negligent Misrepresentation

Plaintiffs allege that WFIS negligently misrepresented that insurance coverage existed on the Manson property even after the policy would have expired in November of 2015.[5] Richardson Decl., docket no. 20, ¶ 8. The Washington Supreme Court has adopted the definition of negligent misrepresentation set forth in the Restatement (Second) of Torts:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance on the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Lawyers Title Ins. Corp. v. Baik*, 147 Wn.2d 536, 545 (2002).

---

[4] Plaintiffs arguments that WFIS should be estopped from arguing that the policy would not have covered the loss and that WFIS's actions interfered with plaintiffs' evaluation of the cause of the water damage are without merit. Plaintiffs cite no authority for the proposition that coverage by estoppel can be asserted against an insurance broker and, despite their claims of interference, plaintiffs did, in fact, receive opinions regarding the cause of the water damage. Skinner Decl., Ex. A (Richardson Dep. 113:7-113:25).

[5] Although Mr. Richardson's inquiry regarding coverage related to his "home policies" generally, taking inferences in plaintiffs' favor, Mr. Jackson's assurance that plaintiffs were "covered" includes the Manson Property. *See* Richardson Decl., ¶ 8.

ORDER - 11

Plaintiffs' claim for negligent misrepresentation fails under Washington law for two independent reasons.  First, plaintiffs cannot establish that their reliance on Mr. Jackson's false representations caused pecuniary loss because, as discussed above, even if plaintiffs had renewed the policy covering the Manson Property, the loss would have been excluded from coverage.

Second, plaintiffs cannot show that their reliance on Mr. Jackson's statements regarding coverage was justified.  The policy covering the Manson Property clearly indicated that it expired on November 5, 2015, approximately six-months before the water damage occurred.  Mr. Richardson testified that he received copies of the Allied policies, Skinner Decl., Ex A (Richardson Dep. at 142:9-143:2), and plaintiffs had an affirmative duty to read the policy covering the Manson Property and know its terms and conditions, *Dombrosky v. Farmers Ins. Co. of Wash.*, 84 Wn. App. 245, 257 (1996).  Justifiable reliance requires the exercise of care and judgment in acting upon representations which run counter to knowledge within his reach.  *See Westby v. Gorsuch*, 112 Wn. App. 558, 575 (2002).  Under the circumstances of this case, it would be unreasonable to conclude that plaintiffs' reliance on Mr. Jackson was justified when the expiration date is listed on the first page of a policy plaintiffs had a duty to read.[6]  For these reasons, plaintiffs' claim for negligent misrepresentation fails as a matter of law.

**C.     Breach of Contract**

---

[6] It should be noted that although evidence of a long-standing relationship involving the provision of coverage advice can justify reliance that might otherwise be unjustified, *see Shah v. Allstate Ins. Co.*, 130 Wn. App. 74, 84-85 (2005); *AAS-DMP*, 115 Wn. App. at 842, as discussed above, there is no evidence of such a relationship in this case.

Plaintiffs allege that they had a contract with WFIS "whereby it agreed to obtain and maintain insurance on [plaintiffs'] various properties and make direct payment of premiums and /or advise [plaintiffs] if coverage did not exist." Complaint, ¶ 20. Under Washington law, a party alleging breach of contract must show (1) the existence of a valid contract; (2) breach of that contract, and (3) resulting damages. *Storti v. Univ. of Wash.*, 181 Wn.2d 28, 35 (2014). A contract requires offer, acceptance, and consideration. *Veith v. Xterra Wetsuits, LLC*, 144 Wn. App. 362, 366 (2008).

Plaintiffs appear to have entirely abandoned their claim for breach of contract because they advance no arguments in opposition to WFIS's motion on that claim. This failure alone is sufficient to warrant dismissal. *See Marts v. U.S. Bank National Association*, 166 F. Supp. 3d 1204, 1205(W.D. Wash. 2016). Even reaching the merits, however, plaintiffs have failed to establish either the existence of a valid contract or damages resulting from breach.

During his deposition, Mr. Richardson was unable to identify any specifics of the contract's formation other than that WFIS agreed to "take care" of his insurance policies. Skinner Decl., Ex. A (Richardson Dep. 151:2-151:9). In fact, he could not recall the credit card he had provided to WFIS for payment. Skinner Decl., Ex. A (Richardson Dep. at 148:12-149:3). In the absence of reasonably certain terms, acceptance of an offer does not create a valid contract. *See Andrus v. Dep't of Transp.*, 128 Wn. App. 895, 898-99 (2005); *see also Sandeman v. Sayres*, 50 Wn.2d 539, 541 (1957) ("If an offer is so indefinite that a court cannot . . . fix exactly the legal liability of the parties, its acceptance cannot result in an enforceable agreement."). Moreover, there is a similar

lack of evidence of consideration. Mr. Richardson admitted that he never paid WFIS for the additional service he expected them to perform, Skinner Decl., Ex. A (Richardson Dep. at 151:21-152:18), and plaintiffs have failed to identify any other act or forbearance they were required to undertake in exchange for WFIS's alleged promises.

Even if a valid contract requiring WFIS to pay plaintiffs' premiums and advise them if coverage existed had been formed, plaintiffs cannot show that damages resulted from any alleged breach because, as discussed above, the policy that covered the Manson Property would not have insured against the loss even if it had been in effect. Accordingly, plaintiffs have failed to establish a *prima facie* case for breach of contract and WFIS is entitled to judgment as a matter of law.

**Conclusion**

For the foregoing reasons, defendant's Motion for Summary Judgment, docket no. 15, is GRANTED, and plaintiffs' complaint is DISMISSED with prejudice.

IT IS SO ORDERED.

Dated this 26th day of July, 2017.

                                              Thomas S. Zilly
                                              United States District Judge

ORDER - 14